IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL REED, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:12-CV-3866-O-BK |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The Court now considers the parties' cross motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 18) be **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 19) be **DENIED,** the Commissioner's decision be **REVERSED**, and the case be **REMANDED** for further proceedings as set out herein.

## BACKGROUND[1]

**Procedural History**

Plaintiff Michael Reed seeks judicial review of a final decision by the Commissioner denying his claim for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). On April 2, 2009, Plaintiff filed for SSI, claiming a disability onset date of March 12, 2008, due to hearing and memory loss, back problems, and depression. (TR. 262). His

---

[1] The following is taken from the transcript of the administrative proceedings, which is designated as "TR.," followed by the page numbers.

application was denied at all administrative levels. (TR. 16, 34-56, 102-13, 118-21, 124-36). He now seeks review in this Court pursuant to 42 U.S.C. § 405(g).

**Factual Background**

At the time of his alleged onset of disability, Plaintiff was 43 years old with a high school education and previous work experience as a warehouse worker and machine operator. (TR. at 26, 274). His past medical history includes an umbilical hernia, lower back and knee pain, hearing loss, seizures, major depressive disorder with recurrent episodes severe without psychotic features, cocaine and alcohol abuse in remission, generalized anxiety disorder, posttraumatic stress disorder, schizoid personality disorder with avoidant traits, depressive personality traits, and schizotypal personality features. (TR. at 355-694).[2]

Plaintiff was diagnosed with an umbilical hernia in August 2008. (TR. at 356). In August 2008, Dr. McHenry noted a decreased range of motion in Plaintiff's back, suggested that Plaintiff refrain from lifting objects heavier than 20 pounds, and recommended surgical removal of Plaintiff's umbilical hernia. (TR. at 356-57, 414-17).

In September 2008, Dr. Kris Weber, Ph.D. conducted a neurophysical evaluation and reported that Plaintiff required additional medical treatment for the hernia, which would impede his physical functioning and performance in manual labor jobs. (TR. at 368, 370). Dr. Weber noted that Plaintiff's recurrent seizure disorder, which was most likely caused by his history of drug and alcohol abuse, required additional medical attention. (TR. at 358, 368-69). Dr. Weber also noted that the condition could contribute to cerebral inefficiency, mental dulling and a slow processing rate. *Id*. Dr. Weber's neuropsychological evaluation revealed that Plaintiff was

---

[2] Although Plaintiff relies on many medical records in the administrative record that precede 2008, those records are not of particular relevance given Plaintiff's alleged disability onset date of March 2008. *See* 20 C.F.R. 416.912(d) (providing that if the claimant states that his disability began less than 12 months before he filed his application, the Commissioner will develop his medical history beginning with the month the claimant says the disability began).

prone to distortions, had intermittent and mild disorganization of thoughts and low processing speeds, and average working memory and verbal comprehension. (TR. at 365, 362-63, 368-69). Additional testing[3] resulted in findings that Plaintiff had dysthymia, generalized anxiety, cognitive disorder, cocaine and alcohol dependence in full remission, reading disorder, stuttering, dysthymic disorder, borderline intellectual functioning, dependent and avoidant traits, very poor visual short term memory, and difficulty learning, retaining, perceiving and processing information. (TR. at 367-70). In September 2008, Dr. Mark Altenau conducted a hearing examination on Plaintiff which showed 17% nerve loss in his right ear and 6% nerve loss in his left ear. (TR. at 371-73).

In May 2009, Dr. Nancy Wilson, Ph.D., a state agency psychologist, issued a psychiatric review and mental residual functional capacity (RFC) assessment, which revealed that Plaintiff had mild social limitations and limited ability to work in coordination or in proximity with others without being distracted by his surroundings. (TR. at 375-92). A second psychiatric review and mental RFC assessment was conducted by state agency psychologist Dr. Jean Germain, Ph.D. in August 2009, which revealed that Plaintiff's ability to understand, remember and carry out detailed instructions was limited. (TR. at 407-08).

For more than a year following April 1, 2010, doctors and mental health professionals at Westmoreland Clinic of Metrocare Services treated Plaintiff for major depressive disorder, recurrent episodes, severe without psychotic features, and cocaine and alcohol abuse in remission. (TR. at 689). Exams revealed that Plaintiff had avoidance anxiety, impaired attention, and memory loss. (TR. at 525, 528, 577, 588, 594, 603). In April 2010 and June 2011, Qualified Mental Health Provider, Kristine Newton and Dr. Juanita Kirby, respectively,

---

[3] Additional testing included The Millon Clinic Multiaxial Inventory—III (MCMI-III), a psychological assessment tool intended to provide information on psychopathology, including specific disorders outlined in the DSM–IV. (Doc. 18-1 at 10 n.2).

diagnosed Plaintiff with major depressive disorder and found that his disability was chronic and required continued medical treatment. (TR. at 515, 689). Dr. George Mount, Ph.D. performed a series of tests that revealed Plaintiff's major depression, generalized anxiety disorder, post-traumatic stress disorder, schizoid personality disorder with avoidant personal traits, depressive personality traits and schizotypal personality features. (TR. at 675-88). Dr. Mount additionally opined that Plaintiff's ability to perform vocational activities, including his ability to follow work rules, relate to coworkers, behave in an emotionally stable manner, and follow directions from supervisors was mostly poor. (TR. 685-86).

In January 2011, Dr. Franklin Heredia diagnosed Plaintiff's hernia as "irreducible." (TR. at 538, 541). Also that year, Plaintiff continued to report knee pain and was diagnosed with tenderness and crepitus by Dr. Heredia. (TR. at 540-41, 552-54). Dr. Heredia prescribed new seizure medication for Plaintiff following Plaintiff's report that he was experiencing five to six seizures per month in 2011. (TR. at 540-541).

**Administrative Hearing**

Dr. Maxwell, Dr. Beard, and vocational expert (VE) Suzette Skinner testified at Plaintiff's July 13, 2011 administrative hearing. (TR. at 80-99). Dr. Maxwell stated that Plaintiff had mild to moderate long term, chronic, low-level depression, and she agreed with Plaintiff's dysthymia diagnosis. (TR. at 83-84). Dr. Maxwell additionally stated she believed Plaintiff could understand, remember and perform simple work tasks, make simple work decisions, and respond appropriately to supervisors and co-workers and that his slowed cognitive functioning would not affect his ability to perform a routine, repetitive task. (TR. at 85-86). Dr. Beard testified that the functional limitations noted in Plaintiff's medical history were reasonable and that it was doubtful that Plaintiff could lift more than 40 pounds without low back pain.

(TR. at 92). The VE stated there were jobs in the workforce that were unskilled, structured and accommodating to the light physical levels Plaintiff's conditions required, such as 3,800 cafeteria attendant positions in Texas and 160,000 silver wrapping positions in the national economy. (TR. at 93-94).

### The ALJ's Findings

On September 2, 2011, the ALJ issued an unfavorable decision to Plaintiff. (TR. at 16-28). Following the five-step sequential analysis of 20 C.F.R. §§ 404.1520(a) and 416.920(a), the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. (TR. at 19). At step two, the ALJ found that Plaintiff had the following severe impairments: (1) major depressive disorder recurrent episodes, severe without psychotic features; (2) cocaine and alcohol abuse in remission; (3) generalized anxiety disorder; (4) post-traumatic stress disorder; (5) schizoid personality disorder with avoidant traits; (6) depressive personality traits; and (7) schizotypal personality features. *Id*. At step three, the ALJ held that the severity of Plaintiff's impairments did not meet the standard listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. at 22). The ALJ determined that Plaintiff had the RFC to perform "light work," could lift 20 pounds occasionally, and could walk, sit and stand for six hours in an eight-hour workday. (TR. at 23). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a warehouse worker or machine operator. (TR. at 26). At step five, the ALJ determined that there were a significant number of jobs in the national economy that Plaintiff could perform. (TR. at 27). The ALJ thus concluded that Plaintiff was not under a disability as defined by the Act. *Id*.

## APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## ANALYSIS

**Whether the ALJ properly applied the proper severity standard as dictated by *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).**

Plaintiff first argues that the ALJ created ambiguity as to the severity standard applied to Plaintiff's impairments and when he failed to find Plaintiff's cognitive impairments severe. (Doc. 18-1 at 14). Plaintiff claims that the ALJ cited the Fifth Circuit's standard in *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985) at step two, but also applied an incorrect severity standard by stating that an impairment is severe "if it is more than a slight abnormality and imposes more than a minimal limitation on physical or mental ability to engage in basic work activities," and not severe if it is a "slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." *Id.* at 15-16. Plaintiff contends neither statement is consistent with the severity standard articulated in *Stone*, because the ALJ's standard allows for an impairment that interferes with work to be found "not severe" while the *Stone* standard does not allow for any interference with work. *Id.* at 16. Plaintiff also avers that the ALJ failed to mention Plaintiff's borderline intellectual functioning or cognitive disorder at step two, and these conditions cause functional

7

impairments that are more severe than the limitations included in the ALJ's RFC. *Id* at 18-19. Plaintiff concludes that because of this, the ALJ's step two findings are "not supported by substantial evidence." *Id.* at 19; *see also* Doc. 21 at 1-3 (reply brief, reiterating arguments).

Defendant responds that the ALJ properly applied the correct legal standard articulated in *Stone*, and recent cases have used language similar to the ALJ's language at issue here. (Doc. 20 at 10-12). While Defendant concedes that the ALJ did not include borderline intellectual functioning as one of Plaintiff's severe impairments, she argues that "the ALJ's [RFC] assessment accommodates limitations due to a cognitive disorder." *Id.* at 12-13. Defendant asserts that the Fifth Circuit has stated borderline intellectual functioning should not be an independent basis for establishing an inability to work. *Id.* at 13. Finally, Defendant avers that any error is harmless because the ALJ necessarily incorporated into the RFC assessment the findings of Dr. Weber who diagnosed Plaintiff with borderline intellectual functioning. *Id.* at 14-15.

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with the Act, however, because the definition includes fewer conditions than indicated by statute. *See Stone*, 752 F.2d at 1104-05. Therefore, the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* at 1101, 1104-05. In other words, the *Stone* standard does not allow for any interference with the claimant's ability to work. *Sweeney v. Astrue*, 2010 WL 6792819 at *5 (N.D. Tex. 2010). The *Stone* court also held

that it would assume that the ALJ applied the incorrect legal standard to the severity requirement unless the correct standard was set forth by reference to *Stone* or a similar opinion, or by an express statement that the court's construction of section 404.1520(c) was used. *Stone*, 752 F.2d at 1106.

Nevertheless, *Stone* error may be harmless if the ALJ continues beyond step 2 of the sequential analysis. *Stone*, 752 F.2d at 1106 ("[i]n view of both the Secretary's position in this case and our recent experience with cases where the *disposition has been on the basis of nonseverity*, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement," thereby mandating reversal) (emphasis added); *see also Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (holding that any error by the ALJ in not citing to *Stone v. Heckler* decision was harmless as it did not affect the claimant's substantial rights).

In the case at bar, the ALJ clearly committed a *Stone* error because he stated that an impairment is severe "if it is more than a slight abnormality and imposes more than a minimal limitation on physical or mental ability to engage in basic work activities." (TR. at 18-19). This is the very standard prohibited by *Stone*. *Stone*, 752 F.2d at 1104-05; *cf. Bradford v. Astrue*, 3:10-CV-2302-BK, 2011 WL 1297528, at *5 (N.D. Tex. Apr. 4, 2011) (Toliver, M.J) (holding that an ALJ's statement that an "impairment or combination of impairments is 'severe' within the meaning of the regulations it if significantly limits an individual's ability to perform basic work activities" is the same standard *Stone* found to be impermissible). Further, the ALJ also stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work." (TR. at 18) (citing to 20

C.F.R. § 416.921; SSRs 85-28, 96-3p, 96-4p). This "minimal effect" standard is also wholly inconsistent with *Stone*. *Bradford,* 2011 WL 1297528, at \*5. Courts in this district have universally refused to find that this standard comports with the standard set out in *Stone*. *Id.* (collecting cases).

Nevertheless, this Court and other courts in this circuit have found that reversal based on a *Stone* error is not required if the ALJ does not terminate the case at step two of the sequential analysis. *Jones v. Astrue*, 821 F. Supp. 2d 842, 849 (N.D. Tex. 2011) (Toliver, M.J.) (stating "if an ALJ proceeds past step two of the sequential evaluation process, it is *presumed* that the ALJ found that a severe impairment existed unless the ALJ states otherwise") (emphasis in original) (collecting cases). In those cases where the ALJ does not explicitly find an impairment to be severe, a *Stone* error is not reversible if the ALJ proceeded beyond the second step of the five-step analysis in analyzing the claimant's impairments, thereby allowing the district court to infer that the ALJ found the impairment severe. In other words, the district court properly can draw this inference where the ALJ considers the impairments in question at later stages of the five-step sequential analysis, which stages are premised on a finding at the second step of the analysis that the impairments were severe. *See Reyes*, 915 F.2d at 154 & n.1. This is to be distinguished from the situation wherein the ALJ commits a *Stone* error by applying an incorrect severity standard, rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to other claimed impairments. *See Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000).

In this case, the ALJ found that Plaintiff had several severe impairments and then continued with the sequential analysis. To the extent the ALJ found that Plaintiff's impairments of (1) major depressive disorder; (2) cocaine and alcohol abuse in remission; (3) anxiety

disorder; (4) post-traumatic stress disorder; (5) schizoid personality disorder with avoidant traits; (6) depressive personality traits; and (7) schizotypal personality features were severe impairments, his failure to correctly set forth the *Stone* standard is not reversible error. *Jones*, 821 F Supp.2d at 849-50.  Regarding Plaintiff's other impairments of borderline personality disorder and cognitive impairment, the ALJ did not expressly find that these impairments were "not severe," nor did he explicitly analyze them at step four of the sequential analysis.  The ALJ did consider several symptoms that may be associated with Plaintiff's impairments of borderline intellectual functioning and cognitive impairments, such as (1) problems with reasoning; (2) slow mental processing; (3) difficulties with attention and memory; and (4) moderate limitations with regard to concentration, persistence, and pace. (Tr. 19-21).  Nevertheless, it is simply not clear from the record before the Court whether the ALJ considered Plaintiff's actual diagnoses of borderline intellectual functioning and cognitive disorder in establishing Plaintiff's RFC.  The Court is not in a position to speculate that the error is harmless and that the result of the administrative proceeding would have been the same.  *See, e.g.*, *Guillen v. Astrue*, 584 F.Supp.2d 930, 936 (W.D. Tex. 2008) (stating that the court would not speculate that the ALJ would reach the same conclusion in the case if the ALJ had given a correct hypothetical question to the VE); *Augustine v. Barnhart*, 2002 WL 31098512, at *10 n.17 (E.D. Tex. 2002) (stating that even if the court is able to discern record evidence supporting the decision, remand was required because the district court does not have authority to make de novo determinations of Social Security disability claims).   The ALJ's partial incorporation into his RFC assessment of some of Plaintiff's potentially related limitations thus does not save the case from remand.  Further, the case Defendant cites for the proposition that borderline intellectual functioning is not disabling is inapplicable because that case did not involve a *Stone* error that warranted mandatory reversal.

11

*Eggins v. Astrue*, 351 Fed. Appx. 909, 911 (5th Cir. 2009). Accordingly, pursuant to *Loza*, 219 F.3d at 393, 399, reversal in this case is required so that the ALJ can apply the correct standard in determining whether Plaintiff's borderline intellectual functioning and cognitive disorder are severe impairments. Because reversal is warranted on this ground, the remaining issues need not be addressed because Plaintiff can raise them on remand. 20 C.F.R. § 416.1483 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 18) be **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 19) be **DENIED,** the Commissioner's decision be **REVERSED**, and the case be **REMANDED** for further proceedings as set out herein.

**SIGNED** September 4, 2013.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE